**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: LATASHA DENISE PARKER, | § | CASE NO. 26-30806 |
|     Debtor. | § | |
| | § | CHAPTER 13 |
| LATASHA DENISE PARKER and | § | |
| ANTHONY B. PARKER, | § | |
|     Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| BAO NGUYEN; PHUONG PHAM NGUYEN; | § | ADV. PROC. NO. _____ |
| AUGUST REI, LLC; AUGUST REI | § | |
| HOLDINGS, LLC; TL GLOBAL, INC.; and | § | DOC. NO. _____ |
| HAWKINS BEND TRUST, | § | |
|     Defendants. | § | |

## ADVERSARY COMPLAINT TO DISALLOW CLAIM NO. 16 AND FOR RELATED RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Latasha Denise Parker (the "Debtor" or "Ms. Parker") and Anthony B. Parker ("Mr. Parker," and together with Ms. Parker, "Plaintiffs") file this Adversary Complaint against Defendants Bao Nguyen, Phuong Pham Nguyen, August REI, LLC, August REI Holdings, LLC, TL Global, Inc., and Hawkins Bend Trust. Plaintiffs object to Proof of Claim No. 16 filed in the Debtor's Chapter 13 case, seek a determination of the validity, extent, and enforceability of the asserted wraparound lien and debt, and seek related legal and equitable relief arising from the same transaction and occurrence. In support thereof, Plaintiffs respectfully show the Court as follows:

### I.    STATEMENT REGARDING PENDING APPLICATION TO EMPLOY

1. The claims asserted on behalf of the Debtor and her bankruptcy estate in this adversary proceeding are brought by TX Attorney Group, PLLC in its capacity as proposed special litigation counsel for the Debtor. On June 12, 2026, the Debtor filed her Application to Employ TX Attorney Group, PLLC as Special Litigation Counsel pursuant to 11 U.S.C. §§ 327(e) and 328(a) (the "Employment Application"), seeking authority to prosecute the estate's claims asserted herein, including the objection to Proof of Claim No. 16. As of the filing of this Complaint, the Employment Application remains pending and has not been granted.

Page 1

2. This Complaint is therefore filed in reliance upon, and contingent upon, the Court's approval of the Employment Application, and is filed at this time to preserve the estate's claims and any applicable deadlines pending that approval. The Firm will seek approval of its employment effective as of the date of this filing, and the Debtor requests that, upon approval, this Complaint be deemed effective as of the date it was filed. Should the Employment Application be denied, the Debtor will promptly advise the Court of the effect of such denial on the prosecution of the estate's claims. For the avoidance of doubt, Plaintiff Anthony B. Parker, a non-debtor, asserts his individual claims herein in his own right, and his claims are not contingent upon approval of the Employment Application.

## II.   NATURE OF THE ACTION

3. This adversary proceeding is necessary because the Nguyens filed Proof of Claim No. 16 asserting a secured claim against the Debtor's principal residence in the amount of $444,763.71, including a claimed prepetition cure amount of $35,077.59, based on a wraparound promissory note and wraparound deed of trust arising from the purchase and financing of 13030 Hawkins Bend, Houston, Texas 77044 (the "Property").

4. The proof of claim placed at issue the enforceability of a disputed wraparound transaction that was already the subject of state-court litigation, that involved an existing first-lien mortgage held by a nonparty lender or servicer, that required Defendants to keep the underlying mortgage current, and that exposed Plaintiffs to the risk of foreclosure despite Plaintiffs' substantial payments and efforts to protect their home.

5. Plaintiffs contend that Claim No. 16 should be disallowed in whole or, at minimum, reduced and subordinated to Plaintiffs' offsets, recoupment, statutory penalties, and damages. The asserted debt and lien are subject to rescission, restitution, forfeiture, reduction, or other equitable adjustment because Defendants failed to disclose material facts, failed to properly service and account for the wraparound loan, failed to provide required notices and information, failed to keep or prove that the underlying debt was kept current, and now seek payment of an inflated, inadequately supported secured claim.

6. Plaintiffs do not seek in this complaint to avoid or adjudicate the validity of the separate first-lien deed of trust held by the underlying lender or its successor or servicer, which is not named as a defendant here. The relief requested is directed to the Nguyens' asserted wraparound claim, the vendor's lien and deed of trust asserted through them, and the related liability of the parties who structured, brokered, serviced, facilitated, or benefitted from the transaction.

7.   Plaintiffs plead their claims and defenses in the alternative under Federal Rule of Civil Procedure 8(d), made applicable by Federal Rule of Bankruptcy Procedure 7008. Nothing in this complaint should be construed as an admission that Claim No. 16 is valid, enforceable, secured, properly calculated, or entitled to allowance in any amount.

### III.   PARTIES

8.   Plaintiff Latasha Denise Parker is the Debtor in Case No. 26-30806, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. She is a record grantee, borrower, and maker under the transaction documents at issue, and she resides at the Property.

9.   Plaintiff Anthony B. Parker is Ms. Parker's spouse, a co-grantee, co-borrower, co-obligor, and co-maker under the transaction documents at issue. Mr. Parker is joined as a plaintiff because the asserted debt and lien affect his title, homestead, contractual obligations, and claims arising from the same transaction.

10.  Defendants Bao Nguyen and Phuong Pham Nguyen (together, the "Nguyens" or the "Investor Defendants") are individuals who claim to be the holders of the wraparound note and beneficiaries of the wraparound deed of trust. The Nguyens filed or caused to be filed Proof of Claim No. 16 in the Debtor's bankruptcy case. Plaintiffs believe they may be served at 922 Wyndham Place, Arlington, Texas 76017, or wherever they may be found.

11.  Defendant August REI, LLC is identified in the payment agreement, borrower statements, payoff materials, and Proof of Claim No. 16 as the loan servicer, payment recipient, notice recipient, or agent for the Nguyens. August REI, LLC may be served through its registered agent or as otherwise permitted by law.

12.  Defendant August REI Holdings, LLC is the entity previously named in Plaintiffs' state-court petition and is believed to be related to, affiliated with, or a misnomer for August REI, LLC, August Real Estate Investments, LLC, or the August REI entity or entities involved in the transaction. Plaintiffs plead misnomer, assumed name, agency, alter ego, single business enterprise, and other related doctrines to the extent necessary to place the proper August REI entity before the Court.

13.  Defendant TL Global, Inc. ("TL Global") is a Texas entity that participated in, facilitated, brokered, marketed, or otherwise assisted in the transaction and the documents through which Plaintiffs were induced to purchase and finance the Property.

14.  Defendant Hawkins Bend Trust is the wholesaler or assignor identified in the AAA Owner Finance Contract and assignment documents. Hawkins Bend Trust purported to assign or sell an equitable interest in the purchase contract for the Property and to arrange for an investor who would purchase the Property and then sell to Plaintiffs through a wraparound financing structure.

15. Whenever this complaint refers to "Defendants" collectively, it refers to the named defendants and to their agents, representatives, employees, members, managers, trustees, successors, assigns, alter egos, assumed names, or persons acting in concert with them, as applicable. Plaintiffs do not allege that each Defendant performed every act, but allege that each Defendant is liable for its own conduct and, where legally appropriate, for conduct performed through agency, joint enterprise, conspiracy, ratification, alter ego, or other derivative-liability principles.

## IV. JURISDICTION, VENUE, CORE STATUS, AND CONSENT

16. This Court has jurisdiction under 28 U.S.C. § 1334 because this adversary proceeding arises under title 11, arises in the Debtor's Chapter 13 case, and is related to the Debtor's bankruptcy case.

17. The District Court has referred bankruptcy cases and proceedings to this Court under 28 U.S.C. § 157 and the applicable order of reference.

18. This proceeding is core under 28 U.S.C. § 157(b)(2)(A), (B), (C), (K), and (O) because it concerns administration of the estate, allowance or disallowance of a claim against the estate, estate counterclaims against claimants, determination of the validity, extent, and priority of liens, and adjustment of the debtor-creditor relationship.

19. This proceeding is properly brought as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 because Plaintiffs seek, among other things, recovery of money or property, determination of the validity, priority, or extent of a lien or other interest in property, injunctive or equitable relief, and declaratory relief related to those matters.

20. Federal Rule of Bankruptcy Procedure 3007(b) permits an objection to claim to be included in an adversary proceeding when the objection is joined with demands for relief of the kind specified in Rule 7001. Plaintiffs therefore include their objection to Claim No. 16 in this adversary complaint.

21. Venue is proper under 28 U.S.C. §§ 1408 and 1409 because the underlying bankruptcy case is pending in this District, the Property is located in Harris County, Texas, and the claims and defenses arise from transactions involving the Debtor, her bankruptcy estate, and her principal residence in this District.

22. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiffs consent to the entry of final orders and final judgment by this Court on all matters as to which the Court has constitutional authority to enter final orders and judgment. To the extent any claim or issue is later determined to be non-core or beyond the Court's constitutional authority to finally adjudicate without consent of all parties, Plaintiffs request that this Court hear the matter and issue proposed findings of fact and conclusions of law to the District Court.

## V.   FACTUAL BACKGROUND

A.  The Property and the Initial Owner-Finance Structure

23.    This dispute concerns Plaintiffs' homestead located at 13030 Hawkins Bend, Houston, Harris County, Texas 77044. The legal description reflected in the transaction documents is Lot 14, Block 1, SUMMERWOOD, SEC. 33, a subdivision in Harris County, Texas according to the map or plat recorded at Film Code No. 653026 of the Map Records of Harris County, Texas.

24.    On or about November 26, 2024, Plaintiffs entered into an AAA Owner Finance Contract or Agreement to Accept Assignment of Owner Finance Contract with Hawkins Bend Trust, identified as the wholesaler or assignor, for the purchase of the Property. The documents recited that Hawkins Bend Trust did not have legal title to the Property and that the agreement represented an option to purchase real property or an assignment of an interest in a real-property contract.

25.    The AAA assignment documents identified an "Investor's Price" of $465,000.00, an "Assignee's Purchase Price" of $534,750.00, a $116,250.00 down payment, and an exact amount financed of $418,500.00. The documents further disclosed that the loan Plaintiffs would sign would have an interest rate higher than the investor's interest rate and would include the balance of the underlying investor loan.

26.    The AAA documents also stated that the investors' interest rate would be increased by three percentage points, and that prepaid taxes, prepaid insurance, escrows, and note servicing would be determined or administered through August REI. These provisions show that the transaction was intentionally structured as a wraparound transaction from the outset and that the parties who arranged it knew the transaction depended on proper administration of an existing underlying mortgage.

27.    The assignment structure required Hawkins Bend Trust to direct an investor to make an offer to acquire the Property and then to place Plaintiffs into a second-stage owner-finance transaction. Plaintiffs allege that Hawkins Bend Trust, TL Global, August REI, and the Nguyens acted in concert or through related arrangements to accomplish that structure.

28.    Plaintiffs have previously filed a related state-court action concerning the same wraparound transaction, title, possession, payment accounting, and threatened foreclosure issues. That action remains pending in the 61st Judicial District Court of Harris County, Texas, Cause No. 2025-35183. At the time this Complaint is filed, a motion to abate is pending in that action. Plaintiffs file this adversary proceeding so that the allowance or disallowance of Proof of Claim No. 16, the validity and extent of the asserted lien, and the parties' related rights and offsets may be determined in connection with Debtor Latasha Denise Parker's pending Chapter 13 case.

B.  The Underlying Loan, Wraparound Note, Deed, and Deed of Trust

29.  On or about January 10, 2025, the Nguyens incurred an underlying loan from Union Home Mortgage Corp. in the original principal amount of $372,000.00, secured by a first-lien deed of trust against the Property. The underlying deed of trust was recorded in the real property records of Harris County, Texas.

30.  On or about January 15, 2025, Plaintiffs executed a Promissory Note - Wraparound in favor of the Nguyens in the original principal amount of $418,500.00. The wraparound note stated that the total principal balance included the balances of the underlying notes and mortgages and that the underlying debts were included in that figure rather than being cumulative debts.

31.  The wraparound note provided for interest at 10.5% per annum until maturity. It further purported to impose a 15% default or matured-rate provision, or the rate of the underlying note, whichever was higher, for matured unpaid principal and interest.

32.  The wraparound note provided for monthly principal and interest payments of $3,828.18, with the first payment due February 15, 2025, and a final maturity date of January 15, 2055.

33.  The transaction also included a General Warranty Deed with Vendor's Lien and a Deed of Trust - Wraparound. The Nguyens asserted a vendor's lien and deed-of-trust lien against the Property to secure the wraparound note. The deed of trust identified Bret A. Schulte as trustee and the Nguyens as beneficiaries.

34.  The deed and deed of trust recognized that the wraparound lien was subject and subordinate to the underlying Union Home Mortgage lien. Thus, Plaintiffs' record title and possession were subject to a pre-existing debt owed not by Plaintiffs, but by the Nguyens, and Plaintiffs' ability to keep their home depended on the Nguyens' performance of their obligation to keep the underlying loan current and to protect against default, acceleration, or foreclosure under the underlying documents.

35.  The payment agreement dated February 4, 2025 directed Plaintiffs to make monthly payments to August REI, LLC at its Garland, Texas address. The payment agreement itemized the monthly payment as $3,828.18 for principal and interest, $428.62 for estimated taxes, $378.59 for estimated insurance, and a $50.00 servicing fee, for a total monthly payment of $4,685.39.

36.  The payment agreement stated that the first monthly payment was due February 15, 2025. It also required an initial impound deposit of $2,043.04 and a monthly impound of $857.21, and it granted the lender a security interest in impounded funds.

37.     The transaction documents and their practical operation placed August REI in a central role. August REI was the designated payment recipient, servicer, escrow or impound administrator, payoff issuer, account-statement generator, and the entity through which Claim No. 16 was effectively supported.

C.  Material Nondisclosures and the Due-on-Sale Risk

38.     Before Plaintiffs entered the wraparound transaction, the Nguyens and the other Defendants knew or should have known that the underlying loan documents materially restricted or prohibited transfer of the Property without the underlying lender's consent. Plaintiffs further allege, based on information obtained before and during the state-court litigation, that Union Home Mortgage Corp. expressly warned the Nguyens that a wraparound sale without lender approval would trigger the due-on-sale clause and could result in acceleration or foreclosure of the underlying loan.

39. Defendants had a duty to disclose material facts regarding the transaction because they made partial disclosures that were highly misleading without additional information. Defendants had superior and exclusive knowledge of material facts, knew Plaintiffs were ignorant of those facts, and knew Plaintiffs had no equal opportunity to discover them.

40. The specific material fact Defendants deliberately concealed was that Union Home Mortgage Corp. had expressly and specifically warned the Nguyens that executing this exact wrap-around transaction would constitute an immediate default event under the Underlying Note and would trigger a foreclosure.

41. This omission occurred continuously from November 26, 2024 (the execution of the AAA Owner Finance Contract) through January 15, 2025 (the execution of the Wrap Note and Deed). The omission should have been disclosed within the transaction documents, the closing disclosures, or verbally by the brokers and facilitators prior to closing. While the transaction documents contained boilerplate language regarding the general possibility of a due-on-sale trigger, it was a deceptive half-truth and a material omission to conceal that the Nguyens had been expressly and actively warned against the transaction by their specific lender.

42. Plaintiffs did not discover this intentional omission until early April 2025, when Plaintiffs' counsel conferred with counsel for Union Home Mortgage Corp. in an attempt to cure the default. During that conferring, Union Home Mortgage Corp.'s counsel confirmed that the lender had expressly told the Nguyens not to execute the wrap-around transaction because it would trigger a default.

43. Defendants intended that Plaintiffs rely on the incomplete and misleading disclosures. Plaintiffs did rely on them by entering the transaction and paying substantial funds. Plaintiffs would not have closed the transaction had they known the underlying lender had already expressly rejected the structure.

D. Early Payment and Servicing Problems

44. Beginning with the first payment cycle, Plaintiffs encountered payment-direction and servicing problems. Although the payment agreement directed payment to August REI, Plaintiffs were instructed that payment should be wired directly to the Nguyens. This immediately departed from the written servicing structure and contributed to confusion concerning who was receiving, crediting, and applying payments.

45. In or about March 2025, Plaintiffs learned that the underlying loan was not being handled as represented and that the Property was at risk because of the Nguyens' obligations on the underlying loan. Plaintiffs began receiving communications or warnings suggesting that the Property could be subject to foreclosure or enforcement activity connected to the underlying mortgage.

46. To protect their home, credit, title, and investment, Plaintiffs were forced to deal with the underlying lender and to tender funds toward the underlying loan. After further investigation and discovery, Plaintiffs learned that the first of Ms. Parker's direct payments to the underlying lender was credited to the Nguyens' underlying loan account. Plaintiffs also learned that a second payment that Plaintiffs had previously understood to have been paid to that account was not negotiated or credited by the underlying lender, was effectively lost in the mail, and was later recovered after Plaintiffs and their representatives contacted the bank.

47. Plaintiffs plead this clarification to avoid any overstatement. Plaintiffs do not seek duplicate recovery of funds that were later recovered from the bank. The corrected facts, however, do not eliminate the core claims. Plaintiffs were still forced to intervene in the Nguyens' underlying mortgage relationship, still faced risk of foreclosure because of the transaction structure and Defendants' servicing failures, still incurred damages and disruption, and still were not given the notices, accountings, or protections required by the transaction documents and Texas law.

48. The servicing confusion was compounded by an improper and facially inaccurate deficiency or default notice sent by August REI. By letter dated April 8, 2025, August REI asserted that Plaintiffs were three months behind on their payments and threatened acceleration and foreclosure.

49. That assertion was impossible under the transaction documents and the actual timeline. The Property was purchased and the wraparound loan documents were executed on or about January 15, 2025. The wraparound note and payment agreement made the first monthly payment due February 15, 2025, with later payments due each month thereafter on the 15th of that month. As of April 8, 2025, the April 15, 2025 installment was not yet due. At most, only the February 15 and March 15 payment dates had passed, and the April 8 letter therefore could not truthfully characterize Plaintiffs as being three months behind.

50. The April 8, 2025 deficiency notice was even more improper because, before that notice was even sent, counsel for the Nguyens, who also represented that he was communicating on behalf of August REI, had corresponded with Plaintiffs' counsel and confirmed that the Nguyens had received Plaintiffs' February payment. Thus, August REI threatened acceleration and foreclosure based on a purported three-month default at a time when the loan had not existed long enough for a three-month borrower delinquency to accrue and when Defendants had already acknowledged receipt of at least one payment during that 3-month span.

51. The April 8, 2025 notice threatened Plaintiffs' homestead, further obscured whether any alleged default was attributable to Plaintiffs, the Nguyens, August REI, the underlying lender, or the inherently unstable wraparound structure, and increased the confusion and urgency surrounding the threatened loss of the Property. Plaintiffs reasonably viewed the notice as further evidence that Defendants were unable or unwilling to properly service, account for, and administer the transaction.

52. The improper deficiency notice was a material event leading to the filing of the state-court lawsuit. Plaintiffs filed suit at least in part because Defendants were asserting inconsistent and impossible default positions, threatening foreclosure, failing to provide accurate payment and underlying-loan information, and refusing to give Plaintiffs a reliable accounting or cure path for the transaction, placing their home at risk.

53. Throughout this period, Plaintiffs and their counsel requested proof that the Nguyens had made the required payments on the underlying loan and requested copies of notices and correspondence from the underlying lender. Defendants failed or refused to provide full documentation sufficient to show that the underlying loan was being serviced, paid, and protected as required, in breach of the loan agreement.

54. The underlying loan was later transferred or serviced by another entity. The new servicer or representatives expressed concern regarding the arrangement, including concern that a party other than the Nguyens was attempting to make payments. These events confirmed that the risks concealed from Plaintiffs were real, foreseeable, and directly connected to the disputed claim now asserted in this bankruptcy case.

E.   The State-Court Action and Bankruptcy Case

55.   Plaintiffs filed suit in the 61st Judicial District Court of Harris County, Texas, Cause No. 2025-35183, asserting claims concerning the same transaction, the same Property, and the same wraparound documents. Plaintiffs also recorded a notice of lis pendens because title to and the right of possession of the Property were directly at issue.

56.   On February 4, 2026, Ms. Parker filed a voluntary petition under Chapter 13 in this Court, Case No. 26-30806. The bankruptcy schedules identify the Property as Ms. Parker's residence and disclose the disputed secured claim connected to August Real Estate or August REI.

57.   The Debtor's Chapter 13 plan proposed to treat the claim secured by the Property by paying a cure amount and ongoing monthly payments through the Trustee. The plan listed a cure claim at the petition date of $29,031.00 and monthly mortgage payments of $4,685.39, consisting of $3,828.18 principal and interest and $857.21 escrow, consistent with the payment agreement.

58.   The state-law dispute is central to claim allowance, plan feasibility, lien treatment, the Debtor's ability to retain her home, and the estate's claims and counterclaims against the entities asserting the secured claim.

F.   Proof of Claim No. 16

59.   On April 15, 2026, the Nguyens filed or caused to be filed Proof of Claim No. 16. The proof of claim identifies the creditor as Bao Nguyen and Phuong Pham Nguyen and lists August REI, LLC as the entity to receive notices at 3960 Broadway Blvd. #107, Garland, Texas 75043.

60.   Claim No. 16 asserts a claim amount of $444,763.71, states that the claim includes interest or other charges, and identifies the basis of the claim as "Deed of trust, lien on house."  It asserts that the claim is secured by real estate and lists a 10.5% fixed annual interest rate.

61.   Claim No. 16 asserts that the amount necessary to cure any default as of the petition date is $35,077.59. The attached Mortgage Proof of Claim Attachment lists a principal balance of $417,653.80, interest due of $27,652.16, fees and costs due of $1,621.91, an escrow deficiency or trust balance of $2,164.16, and total debt of $444,763.71.

62.   The same attachment and supporting statement assert a total monthly payment of $5,678.34, consisting of $3,828.18 principal and interest, $1,800.16 monthly escrow, and $50.00 private mortgage insurance or other monthly charge. That asserted monthly payment materially differs from the payment agreement and the Chapter 13 plan treatment, which reflected a $4,685.39 total monthly payment and an $857.21 monthly impound.

63. The payoff support attached to Claim No. 16 uses a payoff date of February 2, 2026, even though the claim was filed on April 15, 2026. The payoff also states that it is void after February 2, 2026, and requires a per diem of $121.82 after that date. Plaintiffs object that a stale, void, or internally inconsistent payoff cannot support the allowance of the claim as filed.

64. The claim support further includes accrued interest from June 15, 2025 to February 2, 2026 in the amount of $27,652.16, accrued late charges of $1,071.91, unpaid charges of $215.00, other fees of $335.00, and a trust balance of $2,164.16. The supporting documents do not provide a sufficient legal or factual basis to allow these amounts in light of the parties' disputes, Plaintiffs' payments, the corrected payment history, Defendants' breaches, and the unresolved validity of the transaction.

65. The proof of claim states that it is not subject to setoff. Plaintiffs dispute that assertion. The asserted claim arises from the same transaction and is subject to Plaintiffs' recoupment, offset, defenses, statutory penalties, damages, restitution, and equitable relief.

66. Claim No. 16 should therefore be disallowed in whole, or alternatively reduced to the amount, if any, that remains after trial, accounting, credit for all proper payments, removal of unlawful charges, application of statutory penalties and damages, and adjudication of Plaintiffs' claims and defenses.

## VI.   AGENCY, ALTER EGO, RATIFICATION, CONSPIRACY, AND MISNOMER

67. Plaintiffs plead that Defendants acted individually and through agents, representatives, related entities, trustees, contractors, servicers, brokers, facilitators, or persons acting in concert. To the extent a Defendant contends that a different related entity performed a specific act, Plaintiffs plead misnomer, assumed name, agency, apparent authority, actual authority, ratification, conspiracy, alter ego, single business enterprise, and veil-piercing as applicable.

68. August REI, LLC, August Real Estate Investments, LLC, and August REI Holdings, LLC are pleaded together or in the alternative because the transaction documents, proof of claim, state-court pleadings, borrower statements, and payoff documents use similar August REI names in relation to the same loan, same property, same servicing address, same phone numbers, and same claim. Plaintiffs seek discovery to determine the exact legal entity or entities responsible.

69. The Nguyens benefited from August REI's servicing, payoff, collection, account-statement, and proof-of-claim support. They accepted, ratified, or adopted August REI's conduct by relying on it to collect payments and to assert Claim No. 16. The Nguyens should not be permitted to claim the benefits of August REI's work while disclaiming responsibility for its errors, omissions, and unlawful charges.

## VII.   CLAIMS FOR RELIEF

A.   <u>Count 1 - Objection to Proof of Claim No. 16 and Request for Disallowance or Reduction</u>

70. Plaintiffs incorporate all preceding paragraphs.

71. Under 11 U.S.C. § 502(b)(1), a claim must be disallowed to the extent it is unenforceable against the debtor or property of the debtor under any agreement or applicable law. Claim No. 16 is unenforceable, in whole or in part, because it rests on transaction documents and charges that are subject to rescission, restitution, fraud defenses, statutory defenses, usury defenses, DTPA defenses, breach-of-contract offsets, failure of consideration, and other state-law defenses.

72. Claim No. 16 is also objectionable because it is not properly calculated. It relies on a payoff that was stale or void by its own terms, claims a monthly payment materially different from the payment agreement, includes unexplained or disputed escrow increases, includes late charges and fees that are not allowable in light of Defendants' prior breaches and the disputed payment history, and fails to credit or account for all relevant payments and recoveries. Claim No. 16 is further objectionable because its default, arrearage, fee, and charge components arise from or are tainted by August REI's inaccurate servicing history, including the April 8, 2025 deficiency notice that falsely asserted a three-month delinquency and threatened acceleration and foreclosure when such a delinquency was impossible under the payment timeline and when Defendants had already acknowledged receipt of Plaintiffs' February payment.

73. Claim No. 16 is subject to recoupment because Plaintiffs' claims arise from the same transaction as the Nguyens' asserted claim: the purchase, financing, servicing, and attempted enforcement of the wraparound note and deed of trust for the Property.

74. Claim No. 16 is subject to offset because Defendants owe Plaintiffs damages, statutory penalties, restitution, refunds, and other amounts arising from Defendants' conduct in the same transaction and related dealings. Plaintiffs reserve the right to seek any required relief from stay, if necessary, to effectuate offset.

75. Claim No. 16 should be disallowed in full. Alternatively, the Court should reduce Claim No. 16 by all payments, recovered funds, unlawful charges, improper interest, statutory penalties, damages, restitution, and other amounts proven at trial or through accounting; determine the amount, if any, of any allowed secured or unsecured claim; and require a corrected proof of claim and corrected accounting before any payment or plan treatment is required.

B.   Count 2 - Determination of Validity, Extent, and Enforceability of Asserted Wraparound Lien

76. Plaintiffs incorporate all preceding paragraphs.

77. The Nguyens assert a vendor's lien and deed-of-trust lien against the Property securing the wraparound note. Plaintiffs dispute the validity, extent, and enforceability of the asserted lien to the extent it secures an unenforceable debt, unlawful charges, rescindable transaction, usurious interest, improper fees, unaccounted impounds, or amounts subject to offset and recoupment.

78. A determination of the lien is necessary because the proof of claim asserts a fully secured claim, the Chapter 13 plan treats the Property, Plaintiffs seek to retain their home, and the asserted lien clouds title and affects both the Debtor's estate and Mr. Parker's property rights.

79. Plaintiffs request a declaration that the wraparound vendor's lien and wraparound deed-of-trust lien are void, voidable, unenforceable, or reduced to the extent the underlying debt is disallowed, rescinded, offset, recouped, forfeited, or otherwise reduced. Alternatively, Plaintiffs request a determination of the exact amount, if any, secured by the wraparound lien after all credits, offsets, damages, penalties, and equitable adjustments are applied.

80. Plaintiffs further request that Defendants be enjoined from attempting to foreclose, accelerate, transfer, collect, or enforce the disputed wraparound lien outside the bankruptcy process except by further order of this Court.

C.   Count 3 - Declaratory Judgment

81. Plaintiffs incorporate all preceding paragraphs.

82. An actual controversy exists concerning the enforceability of the transaction documents, the amount of any debt, the validity and extent of the asserted lien, the parties' rights and obligations under the wraparound note and payment agreement, the proper accounting for payments and impounds, and whether Defendants may enforce Claim No. 16 as filed.

83. Plaintiffs request declarations that:

    a.  Claim No. 16 is disallowed, or alternatively reduced to the amount determined by the Court after accounting, offsets, recoupment, and adjudication of Plaintiffs' claims;

    b.  Defendants may not collect interest, default interest, late charges, attorney's fees, escrow increases, payoff fees, release fees, or other charges unless they prove a contractual and legal basis for each item;

    c.  The wraparound vendor's lien and wraparound deed of trust are unenforceable or reduced to the extent the underlying debt is unenforceable, rescinded, forfeited, offset, or recouped;

    d.  d. Plaintiffs are entitled to a full accounting of all payments received, all payments made on the underlying loan, all impounds held or disbursed, all notices received from any underlying lender or servicer, all communications concerning due-on-sale, and all fees or charges added to the account; and

    e.  Plaintiffs are entitled to such other declarations as are necessary to resolve the parties' rights and obligations concerning the Property and Claim No. 16.

D.    <u>Count 4 - Breach of Contract Against the Nguyens</u>

84.    Plaintiffs incorporate all preceding paragraphs.

85.    The wraparound note, deed of trust, payment agreement, and related transaction documents constitute valid and enforceable contracts or, alternatively, documents Defendants seek to enforce and therefore cannot selectively disclaim.

86.    The Nguyens materially breached their obligations by, among other things, failing to keep the underlying loan current or to prove that it was kept current when requested, failing to protect Plaintiffs from default or acceleration under the underlying loan, failing to promptly provide notices and correspondence from the underlying lender, failing to account for payments and impounds, accepting or ratifying improper servicing and collection conduct, and asserting an inflated proof of claim based on improper charges.

87.    The Nguyens' breaches caused Plaintiffs damages, including loss of funds, disruption of title and possession, threatened foreclosure, impaired ability to perform and confirm a Chapter 13 plan, out-of-pocket losses, attorney's fees, costs, emotional distress damages recoverable under applicable law, and other consequential damages.

88.    Plaintiffs seek actual damages, restitution, rescission, offsets, recoupment, attorney's fees, costs, and all other relief available under the contracts and applicable law.

E.      Count 5 - Breach of Contract, Negligent Servicing, and Accounting Against August REI

89.     Plaintiffs incorporate all preceding paragraphs.

90.     August REI was a party to, or the designated administrator under, the February 4, 2025 Payment Agreement. To the extent August REI contends it was not in direct contractual privity with Plaintiffs under the Wrap Note, August REI acted as the Nguyens' disclosed or undisclosed agent, rendering the Nguyens vicariously liable for August REI's breaches, while August REI remains directly liable for breaching the voluntarily undertaken duties in the Payment Agreement.

91.     August REI breached the Payment Agreement, its agency duties, and its voluntarily undertaken duties by providing inconsistent payment directions; failing to properly account for payments and impounds; failing to provide accurate reinstatement and payoff information; adding or supporting improper charges; failing to reconcile the account with the underlying loan; supporting a proof of claim that materially deviated from the payment agreement and plan treatment without adequate explanation; issuing an April 8, 2025 deficiency or default notice falsely asserting that Plaintiffs were three months behind and threatening acceleration and foreclosure when the loan documents and payment schedule made that assertion impossible; and continuing to support default-related charges and claim amounts without first correcting the false default narrative or providing a reliable accounting.

92.     Plaintiffs seek damages, equitable accounting, disgorgement or restitution of improper charges, offsets and recoupment against Claim No. 16, attorney's fees where recoverable, and all other relief to which Plaintiffs are entitled.


F.      Count 6 - Breach of Contract and Failure of Consideration Against Hawkins Bend Trust, TL Global, and Related Defendants

93.     Plaintiffs incorporate all preceding paragraphs.

94.     The AAA Owner Finance Contract and assignment documents required Hawkins Bend Trust and related facilitators to arrange for an investor who was willing and able to purchase the Property and complete the owner-finance transaction on the represented terms. The documents further contemplated that Plaintiffs' funds would be used to reimburse investor costs, fund escrows, and enable the transaction to close and operate properly.

95. Hawkins Bend Trust, TL Global, and the related facilitator Defendants breached their obligations by arranging or facilitating a transaction with investors who were not willing or able to comply with the underlying mortgage obligations, by failing to ensure adequate disclosure of the due-on-sale risk and underlying lender warning, by failing to provide the promised viable owner-finance structure, and by refusing to unwind the transaction or refund Plaintiffs' money after the transaction failed in the manner Plaintiffs allege.

96. The failure of the investor and servicing structure constitutes a material breach and failure of consideration. Plaintiffs seek rescission, restitution, damages, attorney's fees where recoverable, and all proper offsets and recoupment against Claim No. 16.

G.      Count 7 - Fraudulent Nondisclosure and Fraud by Omission

97. Plaintiffs incorporate all preceding paragraphs.

98. Defendants had duties to disclose material facts because they made partial disclosures that were misleading without additional information, had superior and exclusive knowledge of material facts, knew Plaintiffs were ignorant of those facts and had no equal opportunity to discover them, and were engaged in a transaction requiring trust in the representations and servicing structure Defendants created.

99. The material facts Defendants failed to disclose include, without limitation, the specific warnings from the underlying lender concerning the wraparound sale, the due-on-sale risk, the lack of lender consent, the consequences of the underlying lender's acceleration or foreclosure, the practical risk that Plaintiffs could lose their home despite paying Defendants, and the true status of payments, notices, and defaults on the underlying loan.

100. Defendants concealed or failed to disclose these facts before Plaintiffs paid substantial funds, executed the transaction documents, accepted title, undertook the wraparound debt, and relied on Defendants to administer the transaction.

101. Defendants intended that Plaintiffs rely on the incomplete and misleading disclosures. Plaintiffs did rely on them by entering the transaction and making payments. Plaintiffs would not have entered the transaction or paid the amounts they paid had the omitted facts been truthfully disclosed.

102. The nondisclosures caused Plaintiffs damages, including the amounts paid into the transaction, threatened loss of their home, costs incurred to protect the Property, attorney's fees and litigation expenses where recoverable, emotional distress damages where recoverable, and other actual and consequential damages.

103. Because the fraud and nondisclosures are tied directly to the transaction underlying Claim No. 16, Plaintiffs also assert fraud as an affirmative defense, offset, and recoupment against the claim and lien.

H.      Count 8 - Negligent Misrepresentation and Misleading Partial Disclosures

104.    Plaintiffs incorporate all preceding paragraphs.

105.    In the alternative to intentional fraud, Defendants supplied false, incomplete, or misleading information in the course of their business or in a transaction in which they had a pecuniary interest. Defendants represented or implied that the wraparound structure was a viable path for Plaintiffs to buy and keep the Property, that payments would be properly serviced, that the underlying loan would be handled, and that Plaintiffs' monthly payments and impounds would protect the Property.

106.    Defendants failed to exercise reasonable care or competence in obtaining or communicating that information. Plaintiffs justifiably relied on the information and omissions, and their reliance caused pecuniary loss. Plaintiffs seek damages, equitable relief, offsets, and recoupment against Claim No. 16.


I.      Count 9 - Texas Deceptive Trade Practices Act

107.    Plaintiffs incorporate all preceding paragraphs.

108.    Plaintiffs are consumers under the Texas Deceptive Trade Practices-Consumer Protection Act because they sought or acquired goods or services, including real property, financing-related services, transaction services, document-preparation services, payment-servicing services, and escrow or impound services, for personal, family, or household purposes.

109.    Defendants engaged in false, misleading, deceptive, or unconscionable acts or practices by, among other things, misrepresenting or failing to disclose the true nature, characteristics, risks, and benefits of the transaction; failing to disclose material facts known at the time of the transaction with intent to induce Plaintiffs into a transaction they otherwise would not have entered; representing that the transaction and services had characteristics or benefits they did not have; taking advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree; and misrepresenting the existence, duration, and amount of any alleged borrower default by threatening acceleration and foreclosure based on an impossible three-month delinquency shortly after the transaction began.

110.    Defendants' conduct was a producing cause of Plaintiffs' damages. Plaintiffs seek actual damages, economic damages, mental anguish damages where recoverable, additional damages for knowing or intentional conduct, attorney's fees, costs, offsets, recoupment, and all other relief available under the DTPA.

111. To the extent Defendants rely on any purported disclaimer, waiver, arbitration provision, limitation of damages, or as-is clause, Plaintiffs plead that such provisions are void, unenforceable, unconscionable, inapplicable, procured by fraud or nondisclosure, or otherwise ineffective as a matter of law or equity in this bankruptcy claims-allowance proceeding.

112. Furthermore, pursuant to Texas Property Code § 5.016(e), Defendants' failure to provide the statutorily required, timely pre-closing disclosures regarding the underlying Union Home Mortgage Corp. lien constitutes a *per se* false, misleading, or deceptive act or practice under Section 17.46 of the DTPA. Plaintiffs relied on this omission to their detriment and are entitled to recover economic damages, mental anguish damages, and attorneys' fees for this statutory violation.

J. <u>Count 10 - Violations of the Texas Debt Collection Act (TDCA)</u>

113. Plaintiffs incorporate all preceding paragraphs.

114. Plaintiffs are "consumers" and the obligations alleged under the Wrap Note constitute a "consumer debt" as defined by the Texas Debt Collection Act, Tex. Fin. Code § 392.001. Regardless of whether Defendants August REI and the Nguyens classify themselves as mortgage servicers, noteholders, or third-party agents, they were engaged in debt collection and qualify as "debt collectors" under Tex. Fin. Code § 392.001(6).

115. Defendants violated Tex. Fin. Code § 392.304(a)(8) by misrepresenting the character, extent, or amount of a consumer debt. Specifically, on April 8, 2025, August REI transmitted a deficiency notice falsely asserting that Plaintiffs were three months delinquent on their payments and threatening acceleration and foreclosure.

116. This representation was factually and legally impossible, as the first payment under the Wrap Note and Payment Agreement was not due until February 15, 2025, meaning a three-month delinquency could not have possibly accrued by April 8, 2025. Furthermore, Defendants had already acknowledged receipt of Plaintiffs' February payment.

117. Defendants' use of this false and deceptive means to collect a debt caused Plaintiffs actual damages, including severe emotional distress, and entitled Plaintiffs to injunctive relief, actual damages, and attorneys' fees pursuant to Tex. Fin. Code § 392.403.

K. <u>Count 11 - Texas Property Code and Public-Policy Violations Relating to Encumbered Residential Property and Equitable-Interest Assignment</u>

118. Plaintiffs incorporate all preceding paragraphs.

119. The transaction involved a residential property that remained encumbered by a recorded lien at the time Plaintiffs were induced to purchase, accept title, execute wraparound loan documents, and assume the risk of an underlying mortgage owed by the Nguyens.

120. Texas law imposes strict disclosure and consumer-protection requirements in transactions involving conveyances of residential property encumbered by a recorded lien. Pursuant to Texas Property Code § 5.016, Defendants were required to provide a highly specific warning and disclosure statement on or before the seventh day *before* the execution of the conveyance or the executory contract.

121. Defendants failed to comply with § 5.016 in both timing and substance. Rather than providing the mandatory disclosures prior to the November 2024 AAA Owner Finance Contract or the January 2025 closing, Defendants withheld the required statutory warning until February 4, 2025, three weeks *after* the transaction was consummated and Plaintiffs' funds were taken.

122. Furthermore, the belated "Notice of Lien Not Being Paid Off" was statutorily defective. It completely omitted the mandatory disclosures regarding the existing insurance policy required by § 5.016(a)(5), failed to disclose the current amount of the debt secured by the lien as required by § 5.016(a)(2), instead listing only the "Original Balance."

123. In a blatant attempt to circumvent Texas consumer protection laws, Defendants embedded a predatory waiver into the belated February 4, 2025 notice, purporting to force Plaintiffs to waive the 7-day advance notice requirement and waive the right to receive the missing statutory information. Procuring a waiver of pre-closing statutory rights weeks after a closing has already occurred is legally ineffective, unconscionable, and a further violation of the Texas Deceptive Trade Practices Act.

124. Because Defendants failed to provide a timely, compliant notice containing all necessary information required by Texas Property Code § 5.016, Plaintiffs maintain their absolute statutory right to cancel and rescind the conveyance and receive a full refund of all amounts paid. Plaintiffs hereby exercise that right of rescission and seek use of these statutory violations as grounds to disallow and entirely offset Claim No. 16.

125. Defendants should not be permitted to enforce a secured claim arising from a residential wraparound transaction that was materially incomplete, misleading, or contrary to the statutory protections intended to protect purchasers in precisely this kind of transaction.

L.    Count 12 - Usury and Unlawful Interest or Charges, Pleaded in the Alternative

126. Plaintiffs incorporate all preceding paragraphs.

127.    Plaintiffs plead usury and unlawful-interest defenses in the alternative. Defendants contracted for, charged, or received interest and interest-equivalent charges through a 10.5% stated note rate, a 15% default or matured-rate provision, late charges, servicing charges, payoff charges, release charges, wire fees, legal or notice fees, escrow or impound charges, points, spread, profit, or other charges that may constitute interest or disguised interest under Texas law.

128.    The transaction was for personal, family, or household purposes and concerned Plaintiffs' homestead. Defendants failed to comply with all applicable Texas Finance Code requirements, constitutional usury limits, lawful-rate ceilings, notice and cure requirements, and limitations on default interest, late charges, and fees.

129.    If and to the extent Defendants contracted for, charged, or received interest greater than allowed by law, Plaintiffs are entitled to statutory penalties, forfeiture, attorney's fees where recoverable, reduction of the claim, disallowance of unlawful charges under 11 U.S.C. § 502(b)(1), and recoupment or offset against Claim No. 16.

130.    Plaintiffs reserve the right to amend this count after discovery into the exact structure of the charges, the identity and licensing status of the parties, the applicable interest ceiling, the treatment of the $69,750.00 spread or profit, the payment and escrow history, the calculation of default interest, and the accounting behind Claim No. 16.

M.    <u>Count 13 - Rescission, Restitution, Money Had and Received, and Unjust Enrichment</u>

131.    Plaintiffs incorporate all preceding paragraphs.

132.    Because Defendants' fraud, nondisclosures, statutory violations, breaches, and failure of consideration went to the heart of the transaction, Plaintiffs are entitled to rescission or equitable unwinding of the wraparound transaction, to the extent the Court determines rescission is appropriate and practicable in the bankruptcy context.

133.    Defendants have received or benefitted from substantial funds paid by or on behalf of Plaintiffs, including down payment funds, closing-related funds, monthly payments, servicing fees, impounds, escrow funds, and other charges. In equity and good conscience, Defendants should not retain those funds while also enforcing Claim No. 16 as if the transaction were valid, fully performed, properly serviced, and accurately accounted.

134.    Plaintiffs seek restitution of all amounts paid that should be returned, disgorgement of amounts unjustly retained, credit for amounts that properly reduced principal or protected the Property, and recoupment or offset of those amounts against Claim No. 16.

135. Plaintiffs acknowledge that one payment previously believed to have been credited to the underlying account was later determined not to have been negotiated or credited and was recovered through bank efforts. Plaintiffs do not seek duplicate recovery of recovered funds. Plaintiffs do seek all unrecovered losses, credits, restitution, and equitable adjustments resulting from Defendants' conduct.

136. To fully effectuate the equitable remedy of rescission and restore the parties to the *status quo ante*, Plaintiffs hereby offer to tender their interest in the Property back to the Nguyens, or to execute a deed without warranty or other appropriate conveyance instrument approved by the Court, conditioned upon and simultaneous with Defendants' full restitution of the $136,901.38, disgorgement of all other amounts unjustly retained, and the complete disallowance of Claim No. 16.

N.    Count 14 - Equitable Accounting and Injunctive Relief

137. Plaintiffs incorporate all preceding paragraphs.

138. Plaintiffs are entitled to an accounting because Defendants controlled the relevant account records, underlying loan information, payoff information, escrow or impound information, payment history, and communications with the underlying lender or servicer. Plaintiffs cannot determine the correct amount of any debt, if any, without a complete and reliable accounting.

139. Plaintiffs request that the Court order Defendants to produce and account for:

 a. All payments received from Plaintiffs or on Plaintiffs' behalf;

 b. All payments made to the underlying lender or servicer;

 c. All funds held, received, disbursed, transferred, or applied as taxes, insurance, impounds, escrow, trust balance, reserve balance, or similar funds;

 d. All notices, demands, default notices, acceleration notices, due-on-sale communications, transfer notices, escrow notices, and payoff communications received from or sent to any underlying lender or servicer;

 e. All default, deficiency, notice of intent, acceleration, foreclosure-referral, reinstatement, and collection notices generated by August REI or any Defendant, including the factual and accounting basis for the April 8, 2025 deficiency notice and any related fee or charge;

 f. All charges, late fees, attorney's fees, release fees, payoff fees, wire fees, default interest, and other fees included in or supporting Claim No. 16; and

 g. All communications among Defendants concerning the transaction, the underlying loan, the due-on-sale clause, lender consent, payment defaults, foreclosure risk, and the filing of Claim No. 16.

140. Plaintiffs also seek temporary and permanent injunctive relief prohibiting Defendants from attempting to foreclose, transfer, assign, collect, accelerate, or otherwise enforce the disputed wraparound debt or lien outside this bankruptcy case and adversary proceeding without further order of this Court.

141. In addition to the automatic stay protecting Debtor Latasha Parker under 11 U.S.C. § 362, Plaintiffs affirmatively invoke the co-debtor stay pursuant to 11 U.S.C. § 1301. The obligations asserted in Claim No. 16 constitute a consumer debt. Therefore, 11 U.S.C. § 1301 automatically enjoins Defendants from taking any act to collect, assess, or recover all or any part of the asserted debt against co-obligor Anthony B. Parker, or from attempting to foreclose on his interest in the Property, rendering any such collection or foreclosure efforts strictly prohibited without further order of this Court lifting said stay.

O.   Count 15 - Attorney's Fees, Costs, and Interest

142. Plaintiffs incorporate all preceding paragraphs.

143. Plaintiffs seek attorney's fees, costs, expenses, and interest under the transaction documents, Texas Civil Practice and Remedies Code Chapter 38, the DTPA, the Texas Finance Code, any applicable Texas Property Code provision, 11 U.S.C. § 105, 11 U.S.C. § 502(b), Federal Rule of Bankruptcy Procedure 7054, and any other applicable law or equitable doctrine.

144. Plaintiffs also seek recovery of all fees and expenses incurred in protecting their rights in the Property, objecting to Claim No. 16, investigating Defendants' accounting, pursuing this adversary proceeding, and obtaining the requested relief.

## VIII.   CONDITIONS PRECEDENT

145. All conditions precedent to Plaintiffs' claims and requested relief have been performed, have occurred, have been waived, have been excused, or have been prevented by Defendants' conduct.

## IX.   RESERVATION OF RIGHTS

146. Plaintiffs reserve the right to amend this complaint to add claims, defendants, statutory grounds, lien-avoidance theories, objections to claim, or additional factual allegations as discovery proceeds and as Defendants produce the documents and information that remain in their possession or control.

147.    Plaintiffs further reserve the right to seek removal, transfer, consolidation, abstention-related relief, or coordination with the pending state-court action as necessary to avoid inconsistent rulings and to ensure that all issues affecting Claim No. 16, the Property, and the parties' rights are adjudicated efficiently and fairly.

## X.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Latasha Denise Parker and Anthony B. Parker respectfully request that Defendants be cited to appear and answer, and that after notice, hearing, trial, or other appropriate proceedings, the Court grant the following relief:

a.  Disallow Proof of Claim No. 16 in its entirety;

b.  Alternatively, reduce Claim No. 16 to the amount, if any, that remains after accounting, offsets, recoupment, damages, statutory penalties, restitution, and removal of all unlawful or unsupported charges;

c.  Determine the validity, extent, priority, and enforceability of the asserted wraparound vendor's lien and wraparound deed-of-trust lien;

d.  Declare the wraparound note, vendor's lien, deed of trust, payment agreement, and related transaction documents void, voidable, rescindable, unenforceable, or subject to reduction and equitable adjustment as proven at trial;

e.  Award Plaintiffs actual damages, economic damages, consequential damages, mental anguish damages where recoverable, statutory damages, DTPA additional damages, usury penalties, restitution, and disgorgement as allowed by law;

f.  Order a full accounting of all payments, impounds, escrow funds, charges, notices, underlying-loan payments, and payoff or reinstatement calculations;

g.  Enjoin Defendants from enforcing, accelerating, foreclosing, transferring, or collecting on the disputed wraparound debt or lien outside the bankruptcy process except by further order of this Court;

h.  Award Plaintiffs attorney's fees, costs, expenses, pre-judgment interest, post-judgment interest, and all other recoverable fees and charges;

i.  Grant Plaintiffs all proper offsets, setoffs, recoupment, credits, and claim-disallowance relief against Claim No. 16; and

j.  Grant Plaintiffs all other and further relief, at law or in equity, general or special, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,


*/s/ Benjamin S. Campagna*
Benjamin S. Campagna
State Bar No. 24078302
Federal Bar No. 3822709
ben@txattorneygroup.com

**TX ATTORNEY GROUP, PLLC**
440 Louisiana Street, Suite 900
Houston, Texas 77002
832-286-0800 – Telephone
281-612-3006 – Facsimile
e-service@txattorneygroup.com


**ATTORNEYS FOR CLAIMANT**


**CERTIFICATE OF SERVICE**

I certify that on July 9, 2026, a true and correct copy of the foregoing document was served through the Court's CM/ECF system on all parties receiving electronic notice, including the Defendants Bao Nguyen, Phuong Pham Nguyen, and August REI Holdings, LLC, as well as and the Chapter 13 Trustee.  Once the filing is accepts and a summons may issue, additional service will be made on the remaining defendants by first-class mail, certified mail, or other method authorized by the Federal Rules of Bankruptcy Procedure.


*/s/ Benjamin S. Campagna*
Benjamin S. Campagna